Mattoon & Co., Inc., (A/C Philip Senegram Co.) v. United States
(No. 4782) [1]

United States Court of Customs and Patent Appeals, April 9, 1954

*Jordan & Klingaman* (*Edward F. Jordan* and *J. L. Klingaman* of counsel) for appellant.

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon* and *Alfred A. Taylor, Jr.*, special attorneys, of counsel), for the United States.

[Oral argument February 4, 1954, by Mr. Jordan and Mr. FitzGibbon]

Before Garrett, Chief Judge, and O'Connell, Johnson, Worley, and Cole, Associate Judges

O'Connell, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, entered pursuant to its decision, C. D. 1525, one judge dissenting. The decision overruled appellant's protest and affirmed the classification and assessment of duty by the Collector of Customs at the port of Los Angeles on an importation of two distinct types of waste pieces of wool fabric imported from Mexico on or about January 13, 1944.

One type, identified at the trial by an official sample of the merchandise, defendant's Exhibit 1, was described on the invoice as "New Pastel Worsted Noodles," hereinafter referred to as "noodles"; the other type, identified by defendant's Exhibit 2, also an official sample of the goods, was described on the invoice as "New Worsted Sweater Clips", hereinafter referred to as "clips."

Both types of the merchandise thus identified were classified by the collector as "Wool rags," dutiable at the rate of 9 cents a pound under the *eo nomine* provision therefor in paragraph 1105 (a) of the Tariff Act of 1930, as amended by the trade agreement with the United

[1] C. A. D. 563

Kingdom, T. D. 49753. Appellant claimed the goods to be properly classifiable as "Waste, not specially provided for" and dutiable under paragraph 1555 of said Act, as modified by said trade agreement with the United Kingdom, and the trade agreement with Mexico, T. D. 50797, at the rate of 7½ per cent ad valorem.

The pertinent provisions of the said paragraphs, as modified, read as follows:

Paragraph 1105 (a)
  Wool and hair wastes:

  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

  Wool wastes not specially provided for_____ 14¢ per lb.

  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

  Wool rags_____ 9¢ per lb.
Paragraph 1555
  Waste, not specially provided for_____ 7½% ad val.

The record consists of the oral testimony of one witness for appellant, Mr. Nathan Brounstein, manager of Philip Senegram Co., who had personal knowledge of and was familiar with the importation at bar; the testimony, by deposition, of three witnesses for the Government; Mr. Abner Koplik, Mr. Harry Jaffe, and Mr. Jacob Eisenberg, all of New York City; together with certain illustrative and documentary exhibits which need not be described at this point.

Counsel for the respective parties have agreed that the commercial meaning of the term "rags" is the same as its common meaning and that no question of commercial designation is involved in the case. Nor is there any dispute as to the source and nature of the subject matter in controversy, which is succinctly described in the decision of the majority:

The record shows that the merchandise in question is a byproduct resulting from the processes used in the manufacture of worsted or wool sweaters. Apparently, in such manufacture, knitted worsted or wool fabric or material is first cut to pattern and then sewn to form the garment. The noodles are very narrow pieces or strips which are the "offal" of the trimming of the garment upon manufacture. They show evidence of having been cut along seams or joinings of material. The clips are irregularly sized pieces which come from the cutting tables where the sweater material is cut to pattern.

Both types of material are, after importation, subjected to processes which convert it into shoddy, which is ultimately used in the woolen industry for remanufacture into yarn, which, in turn, may be used in the manufacture of cloth or other fabrics.

The sole issue before the court is whether the imported merchandise is wool rags, as classified by the the Collector of Customs; or is waste, not specially provided for, as claimed by appellant, the importer. The latter has the dual obligation of overcoming the presumption of correctness attaching to the collector's classification and of affirmatively proving its own claim.

The term "rag" is a familiar word which has been defined as follows:

*Webster's New International Dictionary—*

    Rag 1. a. A waste piece of cloth torn or cut off; a tattered piece of cloth;
        a shred; tatter.

        b. pl. Remnants of used clothing, utilized for paper, lint, shoddy, etc.

*New Standard Dictionary—*

    Rag, n. 1. A fragment of cloth torn or partly torn from its original con-
        nection; especially, a worn, frayed, or torn bit of a garment; * * *.

The witness Brounstein, manager of the importing firm in the case at bar, which deals in rags and wastes, testified that the imported merchandise was called "Sweater Clips"; that it was not wool waste, and was not usable as a rag; for the following stated reasons:

* * * First of all, the clips are of a much smaller size. The noodles are much smaller than even the clip. A rag in our line of business is considered an old worn out garment or pieces of cloth that come from a worn out garment which has been discarded for any use—for any further use than for what its original intent was for.

    Q. So, you would say that the importation here could not be utilized as a rag? A. No, sir.

    Q. And, would you call it wool waste? A. No.

    Q. Why not? A. Wool waste is usually known in the trade as a fibrous material that is accumulated and traded in in that category and which results from the waste from machines in woolen mills that are using what we call virgin wool or raw wool in the process of manufacturing that waste, or I mean to say wool.

    Q. Manufacturing the yarn? A. Yes.

    Q. And, the wool waste you know of comes from the manufacturing of the wool yarn? A. Yes.

        Judge Ekwall: Before it has been knitted; woven?

        The Witness: That's correct.

By Mr. Stein:

    Q. You mean from its raw state into the yarn? A. Yes, sir.

    Q. And, that is called wool waste? A. Yes.

    Q. The offal from the manufacture of the wool yarn is called wool waste? A. Yes, sir.

Opposed to the testimony of the importer just recited, the Government called three qualified witnesses, all of whom had dealt in and handled waste materials for many years. As summarized in the decision of the majority:

Their testimony is to the effect that the term "wool rags" is a collective term covering a wide variety of waste materials, embracing cuttings obtained from new garments as well as discarded pieces from old and used articles, and that the two items here involved are included within the general term "wool rags."

The issue here does not, however, concern the facts of the case but resides in the point of law which those facts establish. The majority observed that the common meaning of the term "wool rags" had been the subject of judicial decisions over a period of years, and, after reviewing the holdings of a group of cited cases,[1] arrived at a basic and controlling conclusion to the effect that the term—

---

[1] *United States* v. *Pearson & Emmott*, 131 Fed. 571; *United States* v. *Castle & Overton, Inc.*, 18 C. C. P. A. (Customs) 21, T. D. 43976; *E. A. Stone & Co.* v. *United States*, 19 C. C. P. A. (Customs) 234, T. D. 45338;

"wool rags" involves what have been termed "new" wool rags, and includes waste fragments or pieces of cloth produced in the process of making up garments.

Appellant admits that a ragged or tattered piece of cloth torn from a new garment or new bolt of cloth is just as much a rag as is a piece of cloth so detached from an old piece of cloth or an old garment.

Appellant also points out that it made no contention in the lower court, nor does it contend here, that because the involved merchandise consists of pieces of new cloth, rather than old, such merchandise is not "rags," as that term is commonly understood. The import of appellant's argument is that the authorities relied upon by the Government, as well as the trial court, have no application to the facts in the instant case and that the decision in *United States* v. *Maurice Lobsitz*, 35 C. C. P. A. (Customs) 146, C. A. D. 386, is controlling of the situation presented by the record.

In that connection it is noted that Chief Judge Oliver in his dissenting opinion discussed the evidence and the law applicable thereto. In so doing, he criticized not only the conclusion reached by the majority but also the applicability as a controlling factor of the authorities upon which the majority relied, and then found:

Since the present merchandise is waste, and not being otherwise provided for, it is classifiable under the residuary provision for "Waste, not specially provided. for," in paragraph 1555, as amended by T. D. 49753, and dutiable thereunder at the rate of 7½ per centum ad valorem.

This conclusion is consistent with the holding in the case of *Maurice Lobsitz* v. *United States*, 17 Cust. Ct. 191, Abstract 51341, affirmed in *United States* v. *Maurice Lobsitz*, 35 C. C. P. A. (Customs) 146, C. A. D. 386. There, as here, the competing provisions were "wool rags," the classification adopted by the collector, and "Waste, not specially provided for," the claim alleged by the importer. The merchandise consisted of strips of white wool felt, remaining from large sheets or rolls used in the manufacture of gaskets, washers, and other felt articles. There was testimony to the effect that the merchandise was a felt clipping or felt cutting or felt scrap. After considering the common meaning of the word "rag," in conjunction with the character of the merchandise there under consideration, the classification as "Waste, not specially provided for" was held to be controlling, the same as I find to be applicable to the present merchandise.

The majority in its decision properly noted that the merchandise in the *Lobsitz* case was different in composition, origin and use from the present merchandise because in the instant case the pieces were cut from knitted cloth while the clippings and cuttings in the *Lobsitz* case had been stamped, punched, or cut from bolts of felted cloth.

Despite the distinction hereinbefore described and other minor distinctions, the fact remains that in *Lobsitz*, as in the case at bar, the imported merchandise consisted of scrap or waste pieces of wool cloth derived from a necessary cutting step in a manufacturing process;

*People on Complaint of Meltzer* v. *Sobel*, 104 N. Y. S. 2d 162 (1950); *Tenement House Department of the City of New York* v. *Hutkoff* (Mun. Ct., N. Y., 1914), 149 N. Y. S. 457; *People* v. *American Wool Stock Corp.*, 286 N. Y. 77 (1941); *People on the Complaint of Meltzer* v. *Nierman*, 71 N. Y. S. 2d 598 (1947).

that the merchandise in neither case was bought or sold under the designation "rags"; nor was a commercial meaning in either case established different from the common meaning of the term "rags," although witnesses in both cases testified as to their understanding of the common meaning of that term.

A careful analysis of the cited authorities leads us to agree with the finding expressed by Chief Judge Oliver in his dissenting opinion, and for that reason the judgment of the United States Customs Court is *reversed*.

JOHNSON, Judge, dissents.

